UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


L. C. RICHARDSON,

        Plaintiff,

v.                                   Case No. 1:12-CV-776
                                     Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

his claim for Supplemental Security Income (SSI).

      Plaintiff was born on February 14, 1970 (AR 134).[1] He alleged a disability onset date

of June 1, 1993 (AR 134). Plaintiff completed the 10th grade and later earned a GED (AR 40). He

had previous employment cooking and cleaning in a restaurant (AR 140) Plaintiff identified his

disabling conditions as: memory problems; ulcers; paranoid; hears voices; depression; and anxiety

(AR 139). As a result of these conditions, plaintiff states that he has problems getting along with

people, remembering things, and concentrating (AR 139). On June 11, 2010, an ALJ reviewed

plaintiff's claim *de novo* and entered a decision denying benefits (AR 19-30). This decision, which

was later approved by the Appeals Council, has become the final decision of the Commissioner and

is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ'S DECISION

Plaintiff's claim failed at the fifth step.  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the application date of July 17, 2007 (AR 21).  At step two, the ALJ found that plaintiff suffered from severe impairments of: schizophrenia; major depressive disorder; and a cognitive disorder (AR 21).  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. (AR 21).  In this regard, the ALJ specifically considered Listings 12.02 (Organic mental disorders), 12.03 (Schizophrenic, paranoid and other psychological disorders) and 12.04 (affective disorders).

The ALJ decided at the fourth step that plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving simple, routine, and repetitive tasks and with no meaningful interaction with others except to take work directions and instructions" (AR 23).  The ALJ further found that plaintiff has no past relevant work (AR 28).

At the fifth step, the ALJ determined that while plaintiff could perform a significant number of jobs at all exertional levels, his ability to perform these jobs has been compromised by his nonexertional limitations (AR 29).  Based upon the vocational expert's testimony, plaintiff could perform the following jobs in the regional economy (identified as the lower peninsula of Michigan): janitor (35,625 jobs); agricultural worker (2,860 jobs); and cleaner of vehicles and equipment (6,615 jobs) (AR 29).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as

defined in the Social Security Act, since July 17, 2007, the date he filed the application for SSI (AR 29-30).

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**Is there substantial evidence to support the Commissioner's rejection of multiple treating physicians' conclusions that the claimant is severely limited in social functioning, daily living, and concentration, persistence and pace?**

### A. Plaintiff's testimony

Plaintiff sets forth extensive excerpts of his testimony given at the administrative hearing. Plaintiff's Brief at pp. 4-10. The apparent purpose of these excerpts is to demonstrate that certain conclusions reached by the ALJ (i.e., that plaintiff takes his medication, goes fishing, is on time, is groomed and dressed properly, can prepare his own meals, shop and count change) are unsupported by the record. *Id.* at p. 4. The ALJ's findings with respect to plaintiff's daily activities appear as follows:

> The claimant has reported enjoying riding his bicycle, and he uses his bicycle for transportation. (2F/3; 3E/17.) The claimant also reported sweeping, doing yard work, and taking out the trash. (3E/17; 4F/4.) The claimant said that he goes fishing on a regular basis. (3E/21.) The claimant also reported taking the medications that his primary care physician prescribed. (14F/5.) The claimant also has been noted as arriving on time for appointments, for which he was adequately groomed and was attired in clothing that was appropriate for the weather, which tends to indicate that the claimant can take care of his own personal care needs. (l4F/5.) Indeed, the claimant testified at the hearing that he could take care of his own personal needs. (Hearing testimony.) The claimant also admitted that he can prepare his own meals, can shop in stores for food, can count change, and can use a checkbook/money orders. (3E/19-20.) In addition, Dr. Pinaire credibly opined that the claimant had a moderate restriction in activities of daily living. (10F/11.)

(AR 22).[2] Plaintiff does not present any legal basis to dispute the ALJ's fact finding or credibility determination. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, plaintiff's apparent objections to the ALJ's findings of fact should be denied.

## B. Plaintiff's Global Assessment of Functioning (GAF) Scores

Plaintiff points out that two medical sources, "Dr. McCulloch" (AR 255) and "Dr. Rausch" (AR 258) assigned him a GAF score of 45. Plaintiff's Brief at p. 11. The "McCulloch" referred to by plaintiff is not a doctor, but rather Leonard J. McCulloch, MA, LLP (AR 256), who concluded that plaintiff had a GAF of 45 after an examination on December 30, 2007 (AR 250-56). While Mr. McCulloch is not a doctor, his findings are co-signed by a psychologist, Lois P. Brooks, Ed.D. (AR 256). The record does not reflect a "Dr. Rausch" having assigned plaintiff a GAF score. It appears that plaintiff is referring to a record review prepared by Charles R. Rausch which reflected, among other things, the GAF score assigned on December 30, 2007 (AR 257-58).

The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from

---

[2] The court notes that plaintiff erroneously cites the ALJ's fact finding as appearing on page 38 of the administrative record.

100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.* A GAF of 45, which the doctors assigned to plaintiff, lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

While plaintiff relies on the GAF score, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Social Security*, No. 95–1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir.2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Commissioner of Social Security*, 415 Fed. Appx. 681, 684 (6th Cir. 2011), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000). As the Sixth Circuit explained in *Kennedy v. Astrue*, 247 Fed. Appx.761 (6th Cir.2007):

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy*, 247 Fed. Appx. at 766. In short, there are no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Secretary of Health & Human Services*, 823 F.2d 922, 927 (6th Cir.1987) (citation omitted). To the extent that plaintiff asserts that his GAF score of 45 establishes a disability, this claim should be denied.

### C. Treating physicians

Plaintiff contends that the ALJ improperly rejected the limitations and residual functional capacity (RFC) assessments of two treating physicians. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations,

a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1.    J. Keith Ostien, Ph. D.[3]

Plaintiff contends that the ALJ improperly gave little or no weight to Dr. Ostien's reports. Plaintiff's Brief at pp. 11-12. The ALJ addressed Dr. Ostien's report as follows:

> On June 11,2009, the claimant had a Psychological Evaluation with intelligence testing with J. Keith Ostien, Ph.D., for the Ingham County Department of Human Services. (21F/3.) The claimant self-reported that his Seroquel and Symbyax made him groggy and slow-thinking. (21F/3.) The claimant denied alcohol and illicit drug abuse. (21F/4.) All of the claimant's I.Q. scores were 72 or

---

[3] The court notes that plaintiff refers to Dr. Ostien as "Dr. Ostein." Plaintiff's Brief at pp. 11-13.

higher. (21F/4.) The results of this testing showed that the claimant might be able to function in a vocational setting in which very basic academic skills were utilized. (21F/5.) The claimant was noted as being very vague about his daily activities (21F/5.) The claimant did not exhibit any evidence of illogical, bizarre, or circumstantial ideation, and the examiner did not see any evidence of a thought disorder. (21F/5.) The examiner noted that the claimant was vague about the content of the voices that he claimed to hear, which, again, tends to call into question the credibility of these allegations. (21F/6.) The claimant denied any current suicidal ideations. (21F/6.) The claimant was oriented to time, person, and place. (21F/6.) I note that I give little to no weight to the examiner's various statements that the claimant would be severely impaired in his capacity to do work-related activities because these statements were based on a single evaluation and did not specify function by function limitations. (21F/6.) The claimant was said to have: bipolar II disorder, depressed, with a need to rule out alcohol abuse; borderline intellectual functioning; and a global assessment of functioning score of 45 on that day. (21 F/7.) Once again, I note that this examiner was not one of the claimant's treating sources.

(AR 27-28).

Non-treating physicians are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989). In addition, while the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson*, 378 F.3d at 545, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Accordingly, plaintiff's claim of error should be denied.

### 2. Ms. Fabiano

Plaintiff contends that the ALJ gave little or no weight to a treating source, whom plaintiff refers to as "Dr. Maureen Fabiano, the treating psychologist," "Dr. Fabiano," "M.A. Fabiano," and "Dr[.] Maureen Fabiano." Plaintiff's Brief at pp. 3, 11-13. The record reflects that

Ms. Fabiano is not a doctor, but rather holds a master's degree and is a limited licensed psychologist

"MA/LLP" (AR 532). The ALJ addressed Ms. Fabiano's opinions (AR 530-34) as follows:

> On July 15,2008, the claimant visited Maureen Fabiano, M.A., L.L.P., at Community
> Mental Health. (l4F/5.) The claimant arrived on time, was adequately groomed, and
> was casually attired in clothing that was appropriate for the weather. (l4F/5.) The
> claimant reported having some paranoia and some depression, and the claimant
> reported taking the medications that his primary care physician prescribed. (l4F/5.)
> The claimant had earlier visited the facility on March 20, 2008, for an intake session
> and self-reported feelings of paranoia and issues with trusting others. (14F/12.) On
> that day, the claimant also self-reported feeling depressed and isolated, but the
> claimant's case manager, Ms. Fabiano, stated that the claimant was pleasant
> throughout the session. (l4F/12.) The claimant admitted that his sleep and his
> appetite were fine, but he alleged that he heard voices that others could not hear.
> (l4F/15.) The claimant reported enjoying fishing and bicycle riding. (14F/16.) The
> claimant was said to have average intelligence, but he was said to have mildly
> impaired concentration/attention and insight. (l4F/17.) On that day, the claimant
> was said to have dysthymic disorder, with a need to rule out schizophrenia, paranoid
> type. (l4F/18.) The claimant also had a session with Ms. Fabiano on January
> 7,2010, with relatively unremarkable results, except for the claimant reporting
> sleeping better but having increased irritation. (20F/2.) In sessions on January
> 21,2009, August 26,2009, and December 3,2009, with Ms. Fabiano, the claimant
> reported some depression and paranoia. (20F/4-5, 9.) On March 31, 2010, the
> claimant reported to Ms. Fabiano that he was sleeping well and was less angry.
> (23F/2.) [FN 1] Overall, the claimant appears to be making significant progress, and
> his treatment notes do not reflect that the claimant's treatment providers are overly
> concerned regarding his mental condition.
>
>> [FN 1] I note that I give little to no weight to the Mental Residual
>> Functional Capacity assessment that Ms. Fabiano completed (l9F,
>> with incomplete duplicates at 17F and 18F) as it is an opinion from
>> a case worker and not a treating physician, as it is not supported by
>> the March 2008 mental status evaluation (l4F/16), as it is not
>> supported by the facility's own treatment records, and as Dr Pathak
>> noted that the claimant had no mental abnormalities. (l6F/3.)

(AR 25).

The ALJ could properly discount Ms. Fabiano's opinions because she is not an

acceptable medical source under 20 C.F.R. § 416.913(a) (defining acceptable medical sources as

licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual

disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). While Ms. Fabiano's opinions can be considered as evidence from an "other" medical source, they are not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 416.913(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). *See also, Gayheart,* 710 F.3d at 378 (psychological therapist is not an acceptable medical source under the regulations); *Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an acceptable medical source under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, 7 Fed. Appx. 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

Pursuant to Social Security Ruling (SSR) 06-3p, opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists  "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06-3p.[4]  The ALJ evaluated and then properly discounted Ms. Fabiano's opinions consistent with SSR 06-3p.  Accordingly, plaintiff's claim of error should be denied.

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).

### IV.    Recommendation

For these reasons, I respectfully recommend that the Commissioner's decision be

**AFFIRMED**.


Dated:  June 21, 2013                                    /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).